The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome. Judge Sung and I would like to thank Judge David Ezra from the District of Hawaii who has an immense district court caseload for his service on the Ninth Circuit. We're so grateful for him and his chambers for working with us in his service. I'd also like to thank so many people in the Pioneer Courthouse who have been so welcoming and so helpful. I'm sorry I can't thank you all by name, but I'd like to at least thank Kathy Dodds, Natalie Batiste, and Chase Brearden, along with everyone else in the Pioneer Courthouse. Thank you for welcoming us and making us feel so at home here. All right, so there are many cases that have been submitted on the briefs. Bustamante Felix v. Garland, Lagunas Hernandez v. Garland, United States v. Dempster, and Stellman v. Amazon. So those will not be argued today, but we do have two cases set for argument, and I would ask that counsel for United States v. Wathen please come forward. Okay, and did I pronounce that correctly? Is it Wathen or Weathen? Good morning, Your Honor. I'm appearing by Zoom. This is Katherine Ball. I'm representing Sean Wathen. Wathen, thank you. Thank you for clarifying that pronunciation. All right, would you like to reserve any time for rebuttal? Yes, Your Honor. Two minutes, please. That's fine. Okay, go ahead, please. Good morning. May it please the Court, counsel for the United States. This appeal may be more challenging for Mr. Wathen due to trial counsel's failure to move for acquittal, but still it is about whether the government proved at trial the agreement necessary to sustain Mr. Wathen's conviction for conspiracy to distribute methamphetamine beginning in the summer of 2015 and ending sometime in February of 2016. The government's response brief described the scope of the conspiracy that it believes was proven at trial. Page 2 states, Based on the trial testimony, Mr. Wathen and others were involved in a conspiracy to traffic methamphetamine from the Hope, Idaho area to the South Pacific islands of Guam and Palau. As this Court has explained, conspiracy requires proof of an agreement, one to commit a crime other than that crime alleged to consist of the sale of drugs itself. The government must show that the buyer and seller had an agreement to further distribute the drug in question. Here, the further distribution is alleged to have occurred in the Pacific islands. For a reasonable juror to conclude beyond a reasonable doubt that there was an agreement for redistribution, it's necessary to consider the context and look at the case in a holistic way. That is, the Court must consider the totality of the circumstances. Mr. Wathen understands that circumstantial evidence can be enough to demonstrate an agreement and the intent to commit the underlying offense. He understands formal agreement is not necessary and the agreement may be inferred from the actions taken. However, proof that he sold drugs to other individuals does not prove the existence of an agreement or a conspiracy. The agreement to commit a crime must be other than the crime that consists of the sale itself. Just going into the facts that have already been put forward in the brief, but I'd like to briefly describe them. Ms. Misball, you've been gone a little over two minutes. Could you please address the gun enhancement? Yes, Your Honor. I think that the gun enhancement, there have been changes that are coming with gun enhancements and the right to have a firearm. The sentencing guidelines today still provide under the gun enhancement section that the sentencing standard for applying that two-point enhancement. We would argue that one, it wasn't demonstrated and also that it should no longer be applied in this type of case. So what are you arguing wasn't demonstrated? Are you, it's a little bit confusing from your brief on appeal. Are you arguing that there was not enough evidence that Wathan actually possessed a firearm or are you conceding that he possessed a firearm and arguing only that the firearm was not connected with the drug offense? Arguing both, Your Honor. There was just two pieces of testimony that indicated that there may have been a gun present. I believe it was DeLuise who said that she thought Baby or Garcia wanted a firearm from Wathan. And then Gall testified that he thought Wathan may have either given a firearm or sold a firearm to Baby. But both testified that it was seven years ago. They had faulty memories. They weren't sure. And I think that the standard for applying that sentencing enhancement is something higher than what the evidence at trial actually demonstrated. So your opening brief specifically says, Mr. Wathan submits that a preponderance of the evidence does not support a connection between the gun and drugs sufficient for this enhancement to apply considering the witness's lack of recollection. So to me that doesn't assert that Mr. Wathan didn't possess the gun  between the gun and drugs. It just asserts that any connection did not satisfy the preponderance of the evidence standard. Isn't that what this says? And you don't address the gun enhancement in your reply brief. So this is what we have on appeal. Yes, Your Honor. The argument is that it doesn't meet the standard required to apply the two-point enhancement for sentencing purposes. But you agree there's nothing in here that says Mr. Wathan did... You're never asserting that Mr. Wathan never possessed the gun. And you're never asserting that there was zero connection between the gun and drugs. You're just saying it wasn't sufficient. There was no testimony that actually saw that he possessed the gun. Nobody testified. I believe if I'm recalling the trial testimony correctly that he possessed the gun. Well, there was evidence that Gold, Garcia, and DeLuise went to Wathan's house to sell multiple pound quantities of meth. And during that time, there was evidence, now not direct evidence, but Wathan gave or sold Garcia a gun. Hillbroom, who did testify, was present at that exchange. I mean, how is he... If he's got a gun and he gives it to Garcia or he sells it to Garcia and there's drugs all over the place, I mean, isn't the jury entitled to fine? Of course, this is a determination by the judge, but still. Yes, Your Honor, this is the judge making the determination based on the testimony at trial. I don't believe, and I will look through the record before... The jury found, of course, that he possessed the meth. But the question is, based on that and that other testimony, wasn't the judge entitled to fine that the guns or gun was present with the drugs? I don't believe there was any testimony that said that there was an actual... Nobody saw the gun. There was conversations about this individual, Garcia, otherwise referred to as Bebe, who wanted a firearm, but I don't think... From your client. He saw the exchange. Yes, from your client. Correct. Here is the testimony of goal. Most people don't want you to meet their plug, you know, their person, but Sean and him decided something and Bebe bought a couple guns or Sean gave him a gun and Bebe bought one gun. I can't remember that either. So the only ambiguity here is whether there's one gun or a couple of guns and whether Sean gave him a gun or whether Bebe bought the gun from Sean. But I don't see any other ambiguity as to the identity of the source of the gun being Sean, the recipient of the gun being Bebe, and that this being in the context of a drug transaction. Your Honor, I think just the lack of memory that goal testified to and the other individual there didn't see it either. It's not clear that it was actually on that date. There's a lot of confusion about the dates and times and when things happened. So I think that there needs to be more to meet that preponderance of the evidence standard. I understand that factual findings are reviewed for clear error, but the district court, to apply that enhancement, would have needed to find by preponderance of the evidence that Weython did have a gun at that transaction and at that time. But at trial, the counsel for Mr. Weython, who I understand was not you, didn't cross-examine about the gun, didn't assert that Mr. Weython didn't possess the gun. It was all just, goal is a liar, you can't believe goal, he's fabricating everything. And why couldn't the judge listen through six days of trial and just make a determination that that aspect of goal's testimony was credible? The court could, Your Honor. I still don't think it rises to the level of a preponderance of the evidence, and Mr. Weython's counsel did not object to many things. He provided that argument as part of sentencing, but again didn't provide any additional evidence at sentencing to show that there was no gun provided, just the argument of counsel at that time. I believe I'm out of time, Your Honor, would you like me to answer questions? No, we can save that for rebuttal, if that's all right. Thank you, Your Honor. All right, thank you. Thank you. Good morning, may it please the court, counsel. The district court correctly applied a two-level enhancement under United States section, or United States sentencing guideline section 2D1.1b1 for possession of a firearm. The court made this decision after it sat through the trial, listened to the witnesses that testified, reviewed the PSR, listened to argument from both the government and defense counsel in regards to this issue, and ultimately ruled that two witnesses testified clearly that a firearm was used in a drug exchange. Those two witnesses were Craig Gohl and Leah DeLuise. Well, I don't think there was testimony it was used during the drug transaction. I think there was testimony that Garcia wanted it. Isn't that true? Is there some evidence that it was used? I think it was used in a way in which oftentimes guns are used during drug transactions. It's a way of garnering relationships, building trust. Oftentimes guns are exchanged for drugs, which Gohl said it was either bought or exchanged. He wasn't sure which. He knew that it happened, but he wasn't clear as to how the transaction occurred, but it occurred during the drug deal. Okay, well, that's occurred during the drug deal is very different from used. Used assumes that somebody pulled out the gun. The government's not alleging that at all. I think my argument, and I think the district court's statement when it said used, is in reference to the fact that it's exchanged during a drug deal, and oftentimes that is used to curry favor and or build relationships. Counsel, how do you deal with rigs? In that case, we held discussion of gun sales, planning to use a gun was not enough, especially where there was no gun recovered. There was no gun recovered, correct? There is no gun recovered. And no witness testified specifically that they saw a gun, correct? Well, Gohl testifies that a gun was exchanged. Did he testify that he saw a gun? He did not say specifically that he saw a gun. Did the government ask him if he saw a gun? We did not. Okay, so there's no testimony specifically that anyone saw a gun. Is that correct? He does not specifically say that he saw a gun. So how do we deal with rigs when they said no gun was recovered, they discussed a gun, there was a plan to use a gun, they thought that the government, I think Briggs said, you know, I'm waiting for my guy to bring the guns, and yet this court said that's not enough. There needed to be a finding specifically that expressly and specifically that the defendant possessed a gun. And do we have a specific finding from the district court that Wayson possessed a gun? The finding from the district court is that he used a gun in a drug exchange. What I see is the district court said two witnesses testified that firearms were used. I don't see if, I mean, I think that could, I mean, there were multiple people involved in this drug exchange, including, I believe, Mr. Hillbroom. So I don't, I guess I'm looking for something a little bit more specific about Mr. Wayson possessing a firearm, and I don't see that in the sentencing transcript, a finding to that effect. Is there something that I'm missing, or are you saying that's just implied by this finding? My argument definitely is that when Wathen testified that a gun was exchanged, he's implying that a gun had to be physically exchanged, and so it was possessed by Wathen. However, if you also look, the district court witnessed this, evaluated that testimony, but it also has the PSR, which notes that the enhancement applies because of the exchange between Golbebe and Wathen. And then you have DeLuise, who also testified that even though she did not see it, she was outside of the room and heard the discussion in regards to the firearm. Isn't the difference in Briggs? Look at Briggs. Floyd indicated that he wanted to purchase guns from Briggs, although Briggs indicated his willingness to sell guns, no sales ever materialized. So here you just have an intent to possess a gun, maybe an intent in the future to sell a gun. But here we have different evidence, right? You have Golbebe specifically saying that's different than Briggs, right? This is not some future potential intent to sell. You have Golbebe's testimony saying there was definitely one exchanged or sold. And, you know, under the Ninth Circuit jury instructions, you only need one witness's testimony. You don't have to have more, but to the extent DeLuise corroborates any aspect of Golbebe's testimony, it just bolsters his credibility. Correct, Your Honor. There was clearly a gun exchange, which is unlike Briggs, in that that was just the perspective of a gun being there. Okay, but I guess what in Golbebe's testimony are you relying on? I mean, I see one sentence saying, I mean, I guess, you know, it's just one sentence saying, I think, you know, a gun was sold or given. To me, that could be they talked about a gun sale, but there's no, I don't know whether Wathan actually possesses that gun. He's agreeing to try and acquire a gun, which would bring this into the land of Briggs, where there's just someone is promising, is claiming they possess a gun to sell or use, is saying they can get a gun to sell or use, and there's so little here. I guess I'm just wondering, what is your best case for perhaps something that vague is enough to meet the government's burden to show by a preponderance of the evidence that the defendant actually possessed a gun? Your Honor, I think the woman in this courtroom has definitely known exactly in regards to the gun exchange. She says, and I'm quoting from an excerpt in regards to a quote that Briggs read, that Sean and Ken were referencing to each other as somebody who indeed bought a couple guns, or John gave him a gun and he bought one gun. I don't remember. Like I said, it's a long time ago. He says, I can't remember that either, whether he gave him a gun or bought him a gun, whether it was one gun or a couple guns. It doesn't say it was Hillbroom that brought the gun and had the gun at that transaction. And this particular transaction, there was no bust at this transaction, right? So arguing that, oh, they should have recovered a gun, well, there was no arrest after this transaction, so no one came to see whether there was a gun, correct? Correct. There is no bust until months later. Right. I'm still trying to understand there. I mean, it's very possible that they agreed on a gun sale, but no one actually possessed a gun at that time. Well, his testimony is that Sean gave him the gun. Well, I mean... I guess I can say, or sold, and you can say, hey, I agree to give you this gun, right, without actually having the gun or a gun to give. And it's just so little, and I'm trying to understand. The government's burden was to show, by a preponderance of the evidence, actual possession. There was no follow-up question or anything. So why isn't the proper remedy under Briggs to remand for an evidentiary hearing to actually show actual possession at the time of the transaction? Or do you have a case saying something like a vague reference that implies possible possession does meet the preponderance of the standard, even when no gun was recovered? Your Honor, I don't have a vague case that would meet that, but I also don't think it's the same circumstance that this Court's describing. He said he gave him a gun. And to me, I think there's no other interpretation than he physically handed him a gun, which is what Gould testified to. There was no follow-up cross by defense counsel. There was no even arguments at sentencing in regards to this. The only thing that they contested was whether Gould could be believed. And when you look at the district court's analysis of this case overall, it's clear that the Court found Gould and DeLuise both credible in regards to their testimony and Wathen's role in this conspiracy. So if I look at Briggs, Mr. Briggs pled guilty, right? This was not after a jury trial. Yes. So in this case, we have a six-day jury trial. The judge sat through the entire thing, presided over the entire thing, ruled on evidentiary objections. I had to be paying attention to the testimony. And that particular statement was not cross-examined, wasn't challenged. If I look at the sentencing memo of Mr. Wathen, it says spending a lot of time cross-examining about a gun is not a good idea with a jury. It's a concession. They didn't... If you look at the testimony of Wathen and DeLuise, the gun was not challenged. So that is the unchallenged testimony at trial. Correct, Your Honor. And the Court had that testimony review at sentencing because the transcripts had been prepared and presented prior to sentencing for the Court to review both DeLuise and Gould's testimony. Your Honor, ultimately, or Your Honors, ultimately, I believe that the Court made the correct factual finding here, and there is preponderance of the evidence to show that Wathen possessed a gun. He gave a gun to Beebe during the course of a drug transaction, which is the testimony on the record. And for the foregoing reasons, the government asks that this Court affirm the defendant's conviction and sentence. Thank you. Ms. Ball, go ahead, please. Thank you, Your Honor. I'd like to note that the court, the sentencing court, did say that his understanding was one of the witnesses testified that Mr. Wathen had actually traded firearms as part of a drug trafficking agreement and then asked to hear more about it at sentencing. But it does seem that the judge apprehended that there was a transaction that was testified to and that one of the witnesses witnessed an actual trade. I think the actual testimony in this court has pointed out some of it is not quite so solid that anybody actually observed this transaction. DeLuise says in her testimony she didn't see firearms. She just heard them discussing it. Hilbroom was there. He was not charged with a firearm enhancement for his sentencing. And then Gall, or Goal, I'm not sure if I'm saying his name right, of course, was a little bit equivocal. I can't remember that either, and it's not clear what he was pointing to. Again, trial counsel could have dove into that and gleaned some additional details but chose not to. And I'm out of time, sorry. All right, thank you very much. I'm sorry, do you have one more question? No, thank you. All right, thank you very much to both counsel for your helpful arguments. This case is now submitted.
judges: KOH, SUNG, Ezra